# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FRANCES FRANCO,

    Plaintiff,

vs.                                            Civil No. 01-0071 WJ/WWD-ACE

LEPRINO FOODS COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed July 31, 2002 **(Doc. 89)**. In this Title VII action, Plaintiff seeks to impose vicarious liability on her employer for claims of wrongful termination and retaliation based on sexual harassment. Having considered Defendant's brief in support of its Motion **(Doc. 90)**; Plaintiff's response brief **(Doc. 98)** and Defendant's reply brief **(Doc. 105),** and having considered the applicable law, I find that Defendant's motion should be granted in part and denied in part, as discussed below.

### Background

The undisputed facts disclose that Plaintiff was employed as a "sweeper" in the processing department of Defendant Leprino Food Company ("Leprino"), which owns a cheese manufacturing plant in Chaves County, New Mexico. Plaintiff's employment was terminated several days after an altercation which occurred on May 25, 2000 between Plaintiff and Alex Loeza, the foreman of the processing department and Plaintiff's immediate supervisor. Sean Benson, the plant supervisor (and supervisor to both Plaintiff and Loeza), sent both Plaintiff and Loeza home immediately following the incident, pending an investigation of the matter by Gilbert Blancas, department manager for human resources. On her way out of the plant, Plaintiff told

Sean Benson that Loeza had been sexually harassing her. At the conclusion of the investigation several days later, the Plant Manager, Steven Becker, terminated Plaintiff's employment.

Defendant's position is that Plaintiff was terminated for insubordination because she physically shoved Loeza and used abusive and threatening language toward him. Such conduct is cause for dismissal under the standards for employee conduct at Leprino Foods.[1] Loeza stated in his deposition that the altercation started when Plaintiff refused to go to the front area to sweep, started yelling at him calling him a "f-ing devil," and accused him of always picking on her. *Ex. 1 at 134-35*. Defendant also contends that Plaintiff had not complained previously of sexual harassment and her mention of harassment as she was being escorted from the plant on May 25th was merely a ploy to save her job.

Plaintiff admits that she yelled at Loeza and states that she shoved his hand away from her because he had pinched her breast until it hurt and was fed up with his behavior. Plaintiff describes the incident as the proverbial final straw in a string of sexually harassing conduct by Loeza she endured throughout her employment.

The Complaint alleges two causes of action. The first is sexual harassment, which appears to be based on theories of quid pro quo, *Compl., ¶ 16*, and hostile environment (*Compl., ¶¶ 7-15*).[2] Plaintiff's second cause of action is for wrongful termination, carried out in retaliation for

---

[1] Conduct which is grounds for immediate dismissal, and which Defendant asserts were grounds for Plaintiff's termination, included: assault and fighting while on the job, insubordination or refusal to follow supervisor's instruction, and use of threats, intimidation, or coercion toward fellow employees, supervisors, customers, or visitors. *Ex. 9, Attachment "Ex. B."*
    Loeza stated in his deposition that the altercation started when Plaintiff refused to go to the front area to sweep, started yelling at him calling him a "f-ing devil," and accused him of always picking on her. *Ex. 1 at 134-35*.

[2] The terms "quid pro quo" and "hostile work environment" are relevant to Title VII litigation to the extent that they "illustrate the distinction between cases involving a threat which

2

complaining about sexual harassment by her foreman Alex Loeza. *Compl., ¶ 19*.

## Discussion

*Legal Standards*

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 671 (10th Cir.1998). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.1994).

Courts have interpreted Title VII to prohibit two types of sexual harassment: quid pro quo sexual harassment and hostile work environment sexual harassment. *Hirschfeld v. NM Corrections Dep't*, 916 F.2d 572, 757 (10th Cir. 1990). Quid pro quo sexual harassment involves a conditioning of tangible employment benefits upon the submission to sexual conduct. *Hicks v Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). Hostile work environment harassment occurs "where [sexual] conduct has the purpose or effect of unreasonably interfering with an

---

is carried out and offensive conduct in general." *See Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 760-62 (1998).

Although the quid pro quo claim in the first count is presented in the form of retaliatory conduct (alleging that Plaintiff was ". . . terminated in retaliation for her refusal to submit to Alex Loeza's demands for sexual favors. . . ."), the claim is more properly construed as a quid pro quo claim. The alleged retaliation does not refer to any protected activity taken by Plaintiff, which is required in this type of action under Title VII. *See e.g., Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir.1998).

individual's work performance or creating an intimidating hostile or offensive working environment." *Meritor Sav. Bank, FSB v. Vison*, 477 U.S. 57, 65 (1986).

*Supervisory Status*

Plaintiff's claims are based on actions of individuals she alleges acted in a supervisory capacity but identifies only Alex Loeza as the harasser. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).[3] Thus, the direction of my analysis depends on whether Loeza's status is a supervisory employee or a co-worker. Defendant asserts, and is correct, that Loeza did not have the authority to hire, fire, promote, discipline, transfer or set Plaintiff's pay. However, Plaintiff sets forth facts regarding Loeza's job responsibilities which precludes summary judgment for Defendant on the issue of whether Loeza is a supervisory employee within the purview of *Burlington* or *Faragher*.

In *Meritor Savings Bank,* 477 U.S. at 72, the Supreme Court held that in ascertaining employer liability in hostile work environment cases, agency principles controlled. As noted, *Burlington* and *Faragher* have since refined that proposition by deciding that an employer is vicariously liable for the hostile environment harassment of a "supervisor." However, in those cases the Court did not attempt to define what constitutes a "supervisor" other than to say that a supervisor has "immediate (or successively higher) authority over the employee." *Burlington* 524

---

[3] While *Burlington* and *Faragher* focused attention on an employer's vicarious liability for a supervisor's conduct, the Supreme Court also recognized "the continuing validity of negligence as a separate basis for employer liability." *Wilson v. Tulsa Jr. Coll. et al.*, 164 F.3d 534, n.4 (10th Cir. 1998) (citing *Burlington*, 524 U.S. 742). If Loeza was merely a co-employee, then Leprino Foods would incur liability where its own negligence is a cause of the harassment, i.e., only if it "knew or should have known" about the conduct and failed to stop it. Plaintiff here does not base her claims on a negligence theory.

4

U.S. at 763; *see also Harrison v. Potash, Inc., et al.*, 158 F.3d 1371, 1376 (10th Cir. 1998) (*Harrison II);* (theory of liability based on "misuse of actual authority" was viable where supervisor had actual and immediate supervisory authority over plaintiff and misused that authority to sexually harass her).

As a foreperson, Loeza could assign work to hourly employees (such as Plaintiff) and tell them where to work. He could switch her from one job to another, had substantial control over working conditions, and could essentially control how Plaintiff spent her work day, including when to take breaks. Additionally, Loeza could exert authority in a punitive manner and could indirectly have some influence over more serious employment decisions. The record contains a sufficient showing that Loeza wielded his authority in such a manner. Plaintiff alleges that because she did not succumb to his sexual advances and suggestions, Loeza started "putting pressure" on her by complaining that she was taking long breaks, and assigning her heavier jobs than she was doing -- e.g., he assigned her to carry heavy hunks of cheese when she refused to give him oral sex. *Ex. 2 at 122, 133-34*; *Ex. 10 at 24* (co-worker noting that Loeza was "always after [Plaintiff]" designating jobs for her when she was already working elsewhere).

Therefore, I continue my analysis on the basis that Loeza's control over Plaintiff's working environment is sufficient to qualify as a "supervisor" within the *Burlington* and *Faragher* context of employer liability. *See Grozdanich v. Leisure Hills Health Ctr.*, 25 F.Supp. 2d 953 973 (D.Minn. 1998) (noting that the "disutility of drawing any distinction" between supervisors who can only recommend significant personnel decisions but nevertheless manage their subordinates' daily activities, and supervisors who have plenary authority over all such matters).

*Non-Tangible Action: "Hostile Work Environment"*

For a hostile environment claim to survive a summary judgment motion, "a plaintiff must

5

show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir.1998) (internal quotation marks and citations omitted). In determining whether an environment is "hostile" or "abusive," the Court looks at the "totality of the circumstances," including relevant factors such as the frequency and severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Smith v. Norwest Financial Acceptance, Inc.*,129 F.3d 1408, 1412 (10th Cir. 1997) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 69 (1986)).

Plaintiff alleges that Loeza continually subjected her to ridicule, humiliation and embarrassment through his comments and gestures and unwanted sexual advances. He "constantly" got too close to her while she was working in the processing area, he would "rub against" her and talk to others about what his sexual intentions were toward her. *Ex. B at 154*. Plaintiff claims Loeza once asked her if she wore dentures because he felt that was the "best oral sex you can get." *Ex. B at 155*. According to Plaintiff, Loeza frequently put his hands on her breasts while making sexually suggestive sounds, and stared at her breasts while grabbing his crotch; stood behind her and rubbed against her buttocks with his crotch, *Ex. 2 at 111*; unzipped his pants and asked her to perform oral sex, *Ex. 2 at 129*; made gestures and suggestive sounds; and told her while touching her that he felt like giving her a "nine-inch injection" and that if she did this once or twice a month she wouldn't have to worry about her job. Plaintiff also described other incidents in which she would be on all fours scraping away the cheese from "catchers" near

the conveyer belts and Loeza would stand on the other side of the line still fully clothed, and "put his private parts" through an area in the catchers where she could see. *Ex. B at 119*. Loeza threatened to fire Plaintiff if she complained, *Ex. B at 119*, and that if she "didn't put out," he would "get rid" of her. *Ex. B at 155*.

Plaintiff alleges that she kept telling Loeza to leave her alone and that her reaction was to push him away, hide in the bathroom and cry and take breaks after these incidents. Several other co-workers witnessed some of the alleged behavior, e.g., Loeza's making obscene mimicking gestures while Plaintiff was sweeping with her knees and elbows on the floor, *Ex. 3 at 23*; Loeza coming up behind Plaintiff and rubbing against her, *Ex. 10 at 15, 18-19;* Loeza touching Plaintiff's breasts on May 25th despite her objections, *Ex. 5;* and Loeza's comments and sexually suggestive gestures, *Ex. 3, Attachment "Ex. 1.*"

Looking at all the evidence in the record, I find the alleged harassing conduct to be of the type and severity proscribed by Title VII, and sufficiently similar in its severity and frequency to other cases that have found a hostile environment to exist. *See, e.g., Faragher*, 524 U.S. at 807-08 (propositioning of plaintiff, simulating sexual act, vulgar references to sexual matters); *Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989) (where supervisor repeatedly propositioned plaintiff and pinched her on buttocks and became more critical of plaintiff after his advances were spurned); *Hirase-Doi v. US West Communication, Inc.*, 61 F.3d 777 (10th Cir. 1995) (where co-worker engaged in sexually offensive remarks propositioning her and attempting to touch her breast; on one occasion grabbed plaintiff between her legs; harasser observed approaching and flirting with numerous other females); *Bailey v. Runyon*, 167 F.3d 466, 469 (8th Cir. 1999) (unwelcome sexual advances including requests to perform oral sex, three or four times a week). Defendant offers a plethora of cases for the proposition that Loeza's conduct as alleged did not

rise to an actionable threshold. Those cases described conduct considerably less egregious than the alleged behavior in this case.

The humiliating or threatening nature of Loeza's conduct is borne up by evidence regarding threats made if she either did not comply or complained, and Plaintiff's reactions to the advances, some of which were observed by co-workers. Given the relatively short course of Plaintiff's employment -- less than nine months -- the frequency of Loeza's harassing conduct renders it sufficiently pervasive such that a reasonable juror could find that it interfered with Plaintiff's work performance and altered the conditions of her employment. Plaintiff alleges that the harassment began in October 1999, within a month of her employment at Leprino Foods. She stated that Loeza put his hands on her breasts about twenty times during her employment; stood behind her while rubbing up against her about ten to twenty times; and would "put his private parts" out in front of her where she could see while she was scraping cheese off the floor on her hands and knees. *Ex. B at 120.* Thus, because the evidence strongly supports an inference that Plaintiff was subjected to a hostile work environment based on sexual harassment, Defendant is not entitled to summary judgment on Plaintiff's hostile work environment (non-tangible employment action) claim.

***Tangible Employment Action : "Quid Pro Quo"***

Defendant argues that Plaintiff's quid pro quo claim should be summarily dismissed. The wrinkle in this case is that the tangible job action was not carried out by the supervisor or harasser (here, Loeza), but by a superior several layers removed in the managerial hierarchy. *Cmp., Llampallas v. Mini-Circuits Lab., Inc.*, 163 F.3d 1236 (11th Cir. 1998) (Title VII plaintiff may establish her entire case simply by showing that she was sexually harassed by a fellow employee and that the harasser took a tangible employment action against her). Plaintiff contends that her

termination was connected to her refusal to submit to Loeza's sexual advances. Employer liability as set out in *Burlington* is premised on an *agent's* misuse of delegated authority. 524 U.S. at 759.

In this case, termination was ultimately decided and carried out by the plant manager, Steven Becker. Loeza's threats to fire Plaintiff if she did not go along with his sexual demands, and Loeza's comment that he wanted to "get rid" of Plaintiff [4] would arguably be sufficient to form a causal connection between her termination and his conduct -- had he been the one who carried out the threats. However, in order for her employer to be liable for sexual harassment by a supervisor where a tangible job action is carried out, Plaintiff is still required to demonstrate that the action occurred as a result of refusing Loeza's unwelcome or threatening sexual advances.

Assuming that Loeza's conduct constitutes unwelcome harassment, Plaintiff is still required to show a causal connection between the adverse job consequence and the refusal to submit to Loeza's demands. *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160 (10th Cir. 1999) (where tangible employment action was taken, employer may challenge employee's claim that discharge occurred "because of" refusal to submit to sexual demands (citing to *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). It has been noted that the burden-shifting analysis familiar to straightforward employment discrimination cases best accommodates this analysis. *Vandermeer v. Douglas County*, 15 F.Supp.2d. 970 (D.Nev. 1998) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). In other words, the plaintiff must first establish a prima facie case of discrimination, to which the employer must respond with a legitimate, nondiscriminatory explanation for its actions. Then the plaintiff must offer evidence that the employer's stated

---

[4] Plaintiff's co-worker, Hector Bugarin, remembers Loeza telling him that Plaintiff was "too old" to do her job. *Ex. 3 at 30*. In the context of a sexual harassment case, the statement does not support Plaintiff's contention that her termination was connected to her refusal to submit to a supervisor's sexual demands. Other evidence of personal conflict between Plaintiff and Loeza, of which Benson may have been aware, falls into the same category.

9

reasons are pretextual.  Under this approach, and even assuming Plaintiff has established a prima facie case of discrimination based on wrongful termination, I find that she has not presented evidence of pretext lurking behind Defendant's decision to terminate her for reasons of insubordination.

Plaintiff infers that Alex Loeza somehow manipulated her termination in making threats to fire Plaintiff if she complained about his conduct and by demanding that Sean Benson send Plaintiff home after the incident,  *Ex. 2 at 177, 230*. While  Loeza did tell Benson to send Plaintiff home after the incident, Benson sent them both home. *Ex. D at 31*.  Plaintiff was not terminated until after Gilbert Blancas had completed the investigation and reported the results to Steven Becker.  The facts in this case simply do not lend themselves to an inference that  Loeza's prejudices and illegal motives could be imputed to Steven Becker, who made the final decision to terminate Plaintiff.  There is no evidence that  Loeza made any recommendation to terminate Plaintiff to Steven Becker, or otherwise influenced Becker's decision, such that a causal connection could be made between Loeza's threats to fire Plaintiff and Becker's decision to fire her.  *See, e.g.*, *Chavez v. City of Arvada*, 88 F.3d 861 (10th Cir. 1996) (employee failed to establish causal connection between his protected activity and later failure to promote where court found that defendant did not recommend that employer not promote plaintiff); *Llampallas,*163 F.3d 1236 (plaintiff failed to show causal connection between alleged harassment by supervisor and company president's decision to discharge plaintiff because president did not know about the harassment).

Becker stated in his deposition that he fired Plaintiff for fighting with Loeza, who was Plaintiff's immediate supervisor. Becker said that his understanding at the time was that Plaintiff

had pushed him. *Ex. E at 87.* There is no evidence that he believed otherwise.[5] His decision to fire Plaintiff was based on Blancas' oral report and written notes as well as written statements from two employees, Lucy Ibarra and Irma Cruz, who stated that they had seen Plaintiff push Loeza. *Ex. E at 88, Ex. G.* Blancas' report, in turn, was based on interviews he conducted immediately after the incident with Plaintiff, Alex Loeza, and Sean Benson.

Blancas' written version of this report indicates that Sean Benson saw Plaintiff as "clearly the aggressor in the situation," and that Benson "broke it up because Frances was moving forward toward Alex. . . ." *Ex. E, Attachment "Ex. 7."* In notes on Blancas' interview with Plaintiff, she reported that Alex was "hassling" her; that she didn't like him to "get close" to her; that he tells her "what to do constantly – I know my job"; that she told Alex she was "tired of him boss [sic] me around"; and that she "didn't push him." *Id.* Plaintiff also complained about Loeza standing behind her rubbing against her "butt" or bumping into her breasts, and that she didn't want to cause any problems because "he is a family man." According to Blancas' interview notes on Alex Loeza, Loeza approached Plaintiff because she had been spending time talking instead of doing her work. Plaintiff called him a "F-----g Son of a Bitch - you are always f-----g and picking on me, if I could I would slap you, you devil," and poked her finger in his chest and shoulder about three times. Such is the information Blancas provided to Steven Becker. There is no evidence here that Becker would not have terminated Plaintiff had she complied with Loeza (e.g., performing oral sex on Loeza), or that she was in fact terminated because she did not.

Plaintiff raises numerous factual disputes concerning the details of the event which led to

---

[5] Plaintiff argues that Becker was "misled" with false or incorrect evidence, and that he knew or should have known that the information provided was false and misleading. My discussion on Plaintiff's rebuttal of Defendant's facts, *below*, should make it clear that the record does not support such an inference.

11

her termination. However, none of these purported factual "disputes" are material to the issue of whether Plaintiff was terminated as a result of her refusing Loeza's sexual advances. Plaintiff points out, for example, that it is not clear whether Plaintiff actually pushed or slapped Loeza,[6] and whether she was in fact the aggressor in the incident. Plaintiff also attacks the integrity of the two witness reports from Ms. Cruz and Ms. Ibarra who observed Plaintiff pushing Loeza, by suggesting that Loeza had a hand in extracting these statements.[7] A third witness, Christie Vallejos, did not see Plaintiff push Loeza, but rather, "finger poke" him in the chest. *Ex. N, Ex. 13*. There is also disagreement regarding how much of the incident Sean Benson witnessed, although it is not disputed that he intervened and broke up the altercation.[8] Viewed together or individually, these factual disputes do not inject any pretextual flavor into either Blancas' recommendation or Becker's decision to fire Plaintiff because they do not suggest that Loeza's harassing of Plaintiff culminated in the termination carried out by Becker. The causal thread is simply too thin to sustain with regard to a quid pro quo claim. Accordingly, Defendant is entitled to summary judgment on the issue of Plaintiff's quid pro quo hostile work environment claim.

*Retaliation - Wrongful Termination*

Plaintiff characterizes her retaliation claim as a state law tort claim of retaliatory discharge, as opposed to a Title VII retaliation claim, which Defendant contends has not been

---

[6] *See*, *e.g., Ex. 4 at 32* (Benson's statement that Loeza told him that he didn't remember that Plaintiff had pushed or slapped him); *Ex. 1 at 137* (Loeza's statement Plaintiff had poked her finger into him but didn't push him).

[7] Plaintiff stated that she observed Loeza speaking to the two women in the lab after the incident. *Ex. 2 at 178*. Although Loeza confirmed being in the lab at the time, the two women deny that Loeza spoke with them.

[8] According to Plaintiff, Irma Cruz and Lucy Ibarra saw Benson "looking at" Plaintiff and Alex Loeza when Plaintiff pushed him. In her deposition, Ms. Cruz said she didn't remember whether Benson saw Plaintiff push Loeza, *Ex. 8 at 35:4-5*, and Ms. Ibarra stated simply that she saw Plaintiff, Alex Loeza and Sean Benson "standing there arguing." *Ex. 9 at 19:21-22*.

administratively exhausted. The complaint states that Title VII, 42 U.S.C. § 2000(a) et seq., is the jurisdictional basis for Plaintiff's claims. In the Pretrial Order, Plaintiff identifies Count II ("Wrongful Termination") as based on "New Mexico Common law on wrongful termination"). However, as Defendant notes in the Pretrial Order, the complaint was never amended to include such a claim. *PTO at 9*. Plaintiff alleges in Count II that "[th]e discharge of the Plaintiff by Defendant's agent, Gilbert Blancas, was for no cause other than the fact that she had complained about the sexual harassment at the hands of Alex Loeza and her refusal to acquiesce to said harassment." Based on the language set forth in the complaint, and because there is no indication that the complaint has been amended to include or substitute a state tort claim of retaliatory discharge, I approach Count II as a straightforward Title VII retaliation claim.

*Exhaustion Requirement*

Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Bolden v. PRC, Inc.*, 43 F.3d 545, 552 (10th Cir. 1994) (plaintiff in a Title VII claim must exhaust administrative remedies before pursuing judicial remedies). I do not find the exhaustion requirement to be an issue in this case. The Tenth Circuit routinely recognizes an exception to the exhaustion rule. If a plaintiff fails to raise a retaliation claim in her EEOC complaint, then the retaliation claim omitted in the EEOC complaint may be included in the judicial complaint if it is "reasonably related" to the allegations in the EEOC charge. *Thompson v. KN Energy, Inc.*, 177 F.Supp.2d 1238, 1255 (D.Kan. 2001) (citing *Simms v. Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir.), *cert. denied*, 528 U.S. 815, 120

S.Ct. 53, 145 L.Ed.2d 46 (1999).[9] Plaintiff's claim that Defendant terminated her because she complained about sexual harassment is reasonably related to both her claim that Defendant terminated her because she refused to submit to Loeza's demands for sexual favors, as well as her EEOC claim of sexual discrimination, *Ex. J*. Thus, Plaintiff's retaliation claim is within the scope of those claims that were raised in her EEOC claim and need not be separately filed in order to be exhausted. *Ingols v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994) (an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint) (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992) (plaintiff may raise unexhausted retaliation claim)); *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993) (federal court's consideration of claims not expressly included in an EEOC charge is appropriate "where the defendant's alleged conduct would fall within the scope of an EEOC investigation reasonably based on the charges actually made).

*Merits of Retaliation Claim*

To establish a prima facie Title VII retaliation claim, a plaintiff must show: (1) he or she was engaged in opposition to Title VII discrimination; (2) he or she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action. *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir.1998). For reasons given below, I find that Plaintiff has presented sufficient evidence to preclude summary judgment on all

---

[9] Defendant cites this case for the exhaustion "exception" recognized by the Tenth Circuit which occurs when the retaliation occurs *after* the filing of an EEOC charge and the subsequent retaliation can be reasonably related to the previous charge. *Mem. Brf. at 23*. However, Defendant fails to acknowledge that in the same case, the court also recognized the "routine" exception which would encompass Plaintiff's situation.

three prongs of a prima facie case.

On her way out of the plant on May 25, 2000, Plaintiff told Benson that Loeza had been sexually harassing her. When questioned about the incident by Gilbert Blancas, Plaintiff did not elaborate on details of past harassment and said that she did not like to talk about it because Loeza was a "family man."[10] Although Plaintiff concedes that she never complained previously to Blancas, she maintains that she started complaining to Sean Benson "almost immediately" after starting her job in the processing department in October 1999 and at that time told Benson she didn't like Loeza to be too close, that Loeza was rubbing up against her and was always excusing his behavior as an "accident." *Ex. B at 144*. Plaintiff complained again in either March, April or May of 2000, but could not remember the exact date. Notes from a meeting Plaintiff had with Benson in February 2000 documenting Plaintiff's complaints regarding Loeza describe general unfair treatment rather than complaints of sexual harassment. *Ex. I.*[11] *Cmp., Petersen v. Mooney et al*, 2002 WL 1938587 (10th Cir. Utah) (no retaliation where plaintiff's complaint about defendant's treatment of co-employee concerned only general unfair treatment). However, Plaintiff contends that the meeting notes do not contain all that she and Benson discussed and that she had also informed Benson that Loeza had told her he would "get rid" of her if she didn't "put out." *Ex. 2 at 172*. Benson denies that Plaintiff said anything at that meeting about conduct that

---

[10] This fact is not disputed, but Plaintiff offers a reason for her reticence. During the May 26th interview with Blancas, she was upset and crying. When she found it difficult to go on, Blancas backed up in his chair, placed his hand on his crotch and asked her to describe how Loeza would touch her. *Ex. 2 at 185*. Blancas denies grabbing his crotch or doing anything sexually suggestive in front of Plaintiff. *Ex. F at 27*.

[11] Plaintiff complained that Loeza picked on her and spread rumors about Plaintiff's age and her inability to do the job. Plaintiff also had concerns about working harder than other people, who took longer breaks and lunches.

15

could be a violation of the company's sexual harassment policy. *Ex. D, 15-18*. In addition to Benson, Plaintiff stated she approached someone else in personnel, but could not remember who that individual was because "they wore helmets and hairnets and all this kind of stuff." *Ex. 2 at 149-50*. Although the details are unclear at this point and the issue may turn out be purely one of credibility, Plaintiff raises the inference that she did complain about sexual harassment by Loeza prior to her termination. Plaintiff also wrote two letters to Defendant asking Leprino Foods to reconsider her termination and requested that she be allowed to explain her "view" of what happened. *Ex. H*. Defendant's position that these letters indicate that no harassment took place is as plausible as Plaintiff's position -- that she wanted to explain her side for what she felt was a "wrongful termination." Further, Plaintiff's mention of a "personal vendetta" and "personal conflict" in the letters could just as easily refer to sexual harassment as ordinary work problems.

Thus, viewing the evidence in favor of Plaintiff, I find the factual discrepancies surrounding her complaints about Loeza's conduct raise issues of credibility which are not appropriate issues for resolution on summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ( judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment); *Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000). I also find that the factual discrepancies regarding what happened at the May 25th incident (e.g., what Benson actually witnessed, alleged tampering with witness statements), to be material to Plaintiff's retaliation claim. In light of Plaintiff's complaints of harassment to Benson and Blancas on and after May 25th, and Loeza's alleged threats to fire Plaintiff if she complained, those underlying facts have sufficient proximity to Blancas' recommendation of termination to preclude summary judgment on the retaliation claim.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 89)** is hereby GRANTED IN PART and DENIED IN PART as follows: (1) summary judgment is GRANTED on Plaintiff's hostile work environment claim of sexual harassment based on a quid pro quo theory; (2) summary judgment is DENIED on Plaintiff's hostile work environment sexual harassment claim in that a reasonable juror could find that Plaintiff was subjected to conduct that unreasonably interfered with Plaintiff's work performance or that created an intimidating hostile or offensive working environment; and (3)summary judgment is DENIED on Plaintiff's Title VII retaliation claim.

_____
UNITED STATES DISTRICT JUDGE