

FILED
02 DEC 30 PM 2:01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANCES FRANCO,

    Plaintiff,

vs.      No. CIV 01-0071-WJ/WWD ACE

LEPRINO FOODS COMPANY,

    Defendant.

## PLAINTIFF'S REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1. Defendant Leprino Food Company ("Leprino") owns a cheese processing plant in Chaves County, New Mexico. (Plaintiff's testimony)

2. On or about August 12, 1999, plaintiff was hired by defendant to work as a sweeper in its cheese processing plant. (Plaintiff's testimony)

3. Plaintiff's employment was terminated several days after an incident which occurred on May 25, 2000 between Plaintiff and Alex Loeza, the foreman of the processing department and Plaintiff's immediate supervisor. (Plaintiff's testimony)

4. Sean Benson, the plant supervisor (and supervisor to both Plaintiff and Loeza), sent Plaintiff home immediately following the incident, pending an investigation of the matter by Gilbert Blancas, department manager for human resources. (Plaintiff's testimony)

5. On her way out of the plant, Plaintiff told Sean Benson that Loeza had been sexually harassing her. (Plaintiff's testimony; Sean Benson's testimony)

1

6.  At the conclusion of the investigation several days later, the Plant Manager, Steve Becker, terminated Plaintiff's employment. (Plaintiff's testimony)

7.  The Complaint alleges two causes of action. The first is sexual harassment. The second cause of action is for wrongful termination, carried out in retaliation for complaining about sexual harassment by Loeza. (Complaint)

8.  Plaintiff's claims of sexual harassment are based on the actions of Alex Loeza (Plaintiff's testimony)

9.  As a foreperson, Loeza could assign work to hourly employees (such as Plaintiff) and tell them where to work. He could switch her from one job to another, had substantial control over working conditions, and could control how plaintiff spent her work day, including when to take breaks. Additionally, Loeza could exert authority in a punitive manner and could indirectly have some influence over more serious employment decisions. (Plaintiff's testimony; Loeza's testimony; Exhibit 6)

10. Because Plaintiff did not succumb to his sexual advances and suggestions, Loeza started putting pressure on Plaintiff by complaining that she was taking long breaks, and assigning her heavier jobs than she was doing – e.g., he assigned assigned her to carry heavier chunks of cheese when she refused to give him oral sex. (Plaintiff's testimony)

11. Loeza told others that he was going to humiliate Plaintiff. (Ramos testimony)

12. Loeza continually subjected her to ridicule, humiliation and embarrassment through his gestures and unwanted sexual advances as follows:

   a. He constantly got too close to her while she was working in the processing area. He would "rub against" her and talk to others about what his sexual intentions were toward her. (Plaintiff's testimony)

b. Loeza once asked her if she wore dentures because he felt that was the best oral sex you can get. (Plaintiff's testimony)

c. Loeza frequently put his hands on her breasts while making sexually suggestive sounds, and stared at her breasts while grabbing his crotch; stood behind her and rubbed against her buttock with his crotch; unzipped pants and asked her to perform oral sex; and told her while touching her that he felt like giving her a "nine-inch injection" and that if she did this once or twice a month she wouldn't have to worry about her job. (Plaintiff's testimony)

d. Plaintiff also described other incidents in which she would be on all fours scraping away the cheese from "catchers" near the conveyor belts and Loeza would stand on the other side of the line still fully clothed, and "put his private parts" through an area in the catchers where she could see. (Plaintiff's testimony)

e. Loeza threatened to fire Plaintiff if she complained, and that if she didn't "put out," he would "get rid" of her. (Plaintiff's testimony)

13. Plaintiff kept telling Loeza to leave her alone. Her reaction was to push him away, hide in the bathroom and cry and take breaks from these incidents. (Plaintiff's testimony)

14. Several other co-workers witnessed some of the behavior, e.g., Loeza's making obscene mimicking gestures while Plaintiff was sweeping with her knees and elbows on the floor; Loeza coming up behind Plaintiff and rubbing against her; Loeza touching Plaintiff's breasts on May 25th despite her objections, and Loeza's comments and sexually suggestive gestures. (Testimony of Marisol Martinez, Hector Bugarin, Daniel Ramos.)

15. Plaintiff's submission to sexual harassment was imposed as a term or condition of continued employment and favorable working conditions.

   a. During the course of her employment at Leprino Loeza regularly told her he would have her fired if she complained about the sexual harassment. (Plaintiff's testimony)

   b. Loeza even told others that he was going to get Franco fired. (Bugarin testimony).

   c. Loeza would make her do things that were not part of her job and tell her that she wouldn't have to do these things if she would perform oral sex on him. (Plaintiff's testimony)

   d. He would impose extra duties on her as punishment as a result of her refusal to submit to oral sex. (Plaintiff's testimony)

   e. On her last day of work, after he pinched her breast and she complained, he told her that she was going to be the one that would be fired. (Plaintiff's testimony)

   f. He told Sean Benson to send her home, which Benson did. (Plaintiff's testimony)

16. Employees of the opposite sex were not subjected to the harassment, and plaintiff was subjected to such harassment substantially on the basis of her sex.

17. Plaintiff did not encourage, welcome, or consent to the harassment.

18. The harassment had a substantial detrimental effect on plaintiff's employment and psychological well being. (Testimony of Plaintiff, Marisol Martinez, Steve De Los Santos, and Daniel Ramos)

   a. Plaintiff subjectively perceived the environment to be abusive.

  b. Plaintiff was offended, embarrassed and would cry as a result of Loeza's actions. (Plaintiff's testimony)

  c. Others observed her crying after being subjected to the harassment. (Testimony of Marisol Martinez and Steve De Los Santos)

  d. Loeza would impose extra duties on her as a result of her refusal to perform oral sex on him. (Plaintiff's testimony)

  e. On the last day of work Loeza's actions were forceful enough to bruise plaintiff's breast. (Plaintiff's testimony)

  f. At that point she was crying and said she could not take it anymore. (Plaintiff's testimony)

19. Plaintiff started complaining to Sean Benson of Loeza's sexual harassment "almost immediately" after starting her job in the processing department in October of 1999.

20. She told Benson she didn't like Loeza to be too close

21. Benson was always excusing Loeza's behavior as an "accident".

22. Loeza misused his supervisory authority to sexually harass Plaintiff.

23. Defendant also had notice of the harassment because such harassment was pervasive and obvious.

24. Defendant failed to investigate and take remedial action in response to plaintiff's complaints.

25. On or about May 30, 2000 plaintiff was terminated in retaliation for her refusal to submit to Alex Loeza's demands for sexual favors.

26.  Defendant had in place a progressive discipline policy which it failed to follow in terminating Plaintiff.

27.  The discharge of the Plaintiff by Defendant's agent, Gilbert Blancas, was for no cause other than the fact that she had complained about the sexual harassment at the hands of Alex Loeza and her refusal to acquiesce to said harassment.

28.  Plaintiff was not guilty of any wrongdoing, or any misconduct, which was a proximate cause of her termination.

29.  Plaintiff suffered the following damages proximately caused by Leprino's action's:

   a. Lost wages from May 30, 2000 to the date of trial, January 14, 2003 in the amount of $52,224. Plaintiff was earning $9.60 per hour and working forty hours per week. One hundred thirty-six of lost wages equals $52,224.

   b. Plaintiff expected to work until the age of 65, another eight years. Plaintiff's future lost income comes to $159,744.

   c. Lost benefits.

   d. Pain and suffering.

   e. Emotional and mental distress.

   f. Loss of enjoyment of life.

30.  Defendant engaged in discrimination with malice or reckless indifference to the federally protected rights of Plaintiff, entitling Plaintiff to punitive damage.

31.  Plaintiff's attorneys are entitled to apply for attorney's fees.

## CONCLUSIONS OF LAW

1. Leprino Foods Company is subject to vicarious liability to Plaintiff for an actionable hostile environment created by Loeza who had immediate (or successively higher authority over the Plaintiff. *Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 760 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807-08 (1998).

2. Loeza's control over Plaintiff's working environment is sufficient to qualify as "supervisor" within the *Burlington* and *Faragher* context of employer liability.

3. Plaintiff has established that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment

4. The harassing conduct is of the type and severity proscribed by Title VII

5. The humiliating or threatening nature of Loesa's conduct is established by evidence regarding threats made if she either did not comply or complained, and Plaintiff's reactions to the advances, some of which were observed by co-workers.

6. The frequency of Loeza's harassing conduct renders it sufficiently pervasive such that it interfered with Plaintiff's work performance and altered conditions of her employment.

7. Loeza misused his supervisory authority.

8. Plaintiff had been denied a tangible employment benefit as a result of refusing to submit to sexual demands of Loeza.

9. Plaintiff was subjected to a hostile work environment based on sexual harassment.

10. To establish a Title VII retaliation claim, plaintiff must show: (1) she was engaged in opposition to Title VII discrimination; (2) she was subjected to adverse employment action subsequent or contemporaneous with the protected activity; and (3)

there is a casual connection between the protected activity and the adverse employment action. Plaintiff has made the requisite showing.

11. Plaintiff does not have to suffer psychological injury to be entitled to relief under Title VII.

12. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by supervisor. *Faragher v. City of Boca Raton*, 118 S.Ct. 2273, 2292-2293 (1998); *Harrison v. Eddy Potash, Inc.* 58 F.3d 1371 (1998).

13. Loeza exercised a significant control over the conditions of employment and misused his supervisory authority.

14. As such, Leprino is liable for Loeza's actions without regard to whether Leprino knew of Loeza's conduct. *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996).

15. Furthermore, the harassment was open and obvious.

16. Benson knew and Leprino should have known of the harassment in question and failed to take prompt or remedial action.

17. Leprino's awareness may be inferred because the harassment was pervasive. *Hirase-Doi v. US West Communications, Inc.*, 61 F.3d 777, 784 (10th Cir. 1995).

18. Furthermore, the numerous incidences of harassment establish notice. (Id. at pg. 783).

19. Plaintiff's damages include past and future lost wages as set out in the findings, lost benefits, pain and suffering, emotional and mental distress, and loss of enjoyment of life all in the amount of $300,000.

20. Plaintiff's damages were proximately caused by the sexual harassment and the retaliation that she was subjected to.

21. Plaintiff is entitled to receive punitive damages as a result of discrimination she was subjected to with malice or reckless indifference to her federally protected rights.

22. An appropriate award of punitive damage is $500,000.00

23. Plaintiff's attorneys are entitled to apply for attorney fee.

GARCIA LAW OFFICE

BY: _____
NARCISO GARCIA, JR.
Attorney for Plaintiff
2033 San Mateo, NE
Albuquerque, NM 87110
(505) 265-5010

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that an original and one copy of. were mailed, along with a copy of this Certificate of Service, on this  30th  day of December, 2002, to: opposing counsel.

_____
Narciso Garcia, Jr.