**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FRANCES FRANCO,

    Plaintiff,

    vs.                                          No. CIV 01-0071 WJ/WWD-ACE

LEPRINO FOODS COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER SETTING FORTH
THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF
LAW RESULTING FROM TRIAL**

THIS MATTER comes before the Court following a non-jury trial in this Title VII sexual harassment case, held January 14 - 16, 2003. Parties have submitted proposed findings of fact and conclusions of law, and were allowed to supplement their findings as well as brief their closing arguments. The Court's findings of fact and conclusions of law are set forth below and are based on a thorough review of the parties arguments and on the evidence, including the testimony of witnesses and exhibits which were admitted during trial. These findings and conclusions resolve all remaining matters in the above-captioned case.

**Procedural and Factual Background**

Plaintiff seeks to hold her employer liable for sexual harassment she alleges she suffered at the hands of her foreman, Alex Loeza ("Loeza"). The "nutshell" facts are as follows: Frances Franco was employed as a "sweeper" in the processing department of Leprino Foods Company ("Leprino" or "Leprino Foods"), which owns a cheese manufacturing plant in Chaves County, New Mexico. Plaintiff's employment was terminated several days after an altercation between

Plaintiff and Loeza, which occurred on May 25, 2000.  Sean Benson, the processing department supervisor (and supervisor to Plaintiff and Loeza), sent both Plaintiff and Loeza home immediately following the incident, pending an investigation of the matter by Gilbert Blancas, department manager for human resources.  Plaintiff, on her way out of the plant, told Sean Benson that Loeza had been sexually harassing her.  At the conclusion of the investigation several days later, the plant manager, Steven Becker, terminated Plaintiff's employment.

Defendant's position is that Plaintiff was terminated for fighting and insubordination because she physically shoved Loeza and used abusive and threatening language toward him, and that such conduct is cause for dismissal under the standards for employee conduct at Leprino Foods.  Plaintiff's explanation regarding this final incident is that she shoved Alex Loeza's hand away from her because he had pinched her breast until it hurt and was fed up with his sexually harassing behavior.

Plaintiff's sexual harassment claim was initially based on theories of quid pro quo, and hostile work environment.[1]  The complaint also included a claim for wrongful termination carried out in retaliation for complaining about sexual harassment by Loeza.  The Court dismissed the sexual harassment claim based on a quid pro quo theory on summary judgment (Doc. 106).  At trial, I granted Defendant's Rule 52 (c) motion to dismiss Plaintiff's wrongful termination (retaliation) claim and Defendant's motion to strike Plaintiff's claim for punitive damages (Doc. 139).  Thus, Plaintiff's sole remaining claim is based on a hostile work environment.  My analysis

---

[1] The terms "quid pro quo" and "hostile work environment" are relevant to Title VII litigation to the extent that they "illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general." Burlington Ind., Inc. v. Ellerth, 524 U.S. 742, 760-62 (1998).

2

of the merits of this claim follows.

## Discussion (Findings of Fact and Conclusions of Law)

### *Existence of Hostile Environment*

I earlier denied Defendant's motion to dismiss Plaintiff's hostile environment claim on summary judgment, finding that Plaintiff's allegations were sufficiently within the description of sexual harassment that is severe and pervasive conduct prohibited by Title VII.  This determination was necessarily made by viewing all the facts favorably to Plaintiff.  However, on the even playing-field of a trial, with other factors such as witness testimony and credibility weighing in the balance, the scale tips against Plaintiff.

Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986), cited in Smith v. Norwest Financial Acceptance, Inc.,129 F.3d 1408, 1412 (10th Cir. 1997).

Plaintiff alleged that Loeza frequently put his hands on her breasts while making sexually suggestive sounds, stared at her breasts while grabbing his crotch and rubbed against her from behind while she was on her hands and knees picking up cheese from the plant floor.  Ms. Franco also claimed that while she bent down to scrape away cheese from "catchers" near the conveyer belts, Loeza would stand on the other side of the line, and "put his private parts" against an open area in the catchers which was visible from where Plaintiff was working.  Plaintiff claimed that Loeza told her he wanted to give her a "nine-inch" injection and that if she did this once or twice a month she wouldn't have to worry about her job.  She also claimed that Loeza opened up his pants and requested oral sex on the stairs leading from the plant floor, and commented that oral

sex would be better if Plaintiff wore dentures.

Plaintiff's case erodes on the basis of supporting testimony, including her own. She is inconsistent in describing these incidents, and when and how frequently they occurred. This inconsistency greatly weakens her credibility. The frequency of some of the harassing incidents -- e.g., Loeza putting his hands on her breasts and standing behind her rubbing up against her (see Doc. 106 at 8) increased from about twenty times during her employment to "almost everyday day" according to Plaintiff's testimony at trial. On direct examination, Plaintiff stated that Loeza exposed his genitals while he was on the other side of and adjacent to a moving conveyor belt. However, on cross-examination, Plaintiff admitted that Loeza's clothes remained on and he only leaned against the conveyor.

As the testimony at trial unfolded, other inconsistencies surfaced, with a frequency and breadth which I find undermines the credibility and reliability of Plaintiff's testimony. Ms. Franco made false statements about her graduation from high school when she applied to Leprino Foods, and other employers, and about the reason she was terminated from Leprino when she applied for employment subsequent to working at Leprino.[2] While Ms. Franco denied raising her voice or making threatening gestures to Loeza during the incident on May 25, 2000, which ultimately led to her termination, every other witness who testified about the incident (Lucy Ibarra, Irma Cruz, Christine Vallejos, Sean Benson and Loeza) saw and testified otherwise. Both Ms. Ibarra and Ms. Cruz saw Ms. Franco argue with and push Loeza. Ms. Vallejos saw Plaintiff "poke" her finger in Loeza's chest. Sean Benson testified that he saw Plaintiff yelling and pointing at the

---

[2] On cross-examination, Plaintiff provided no rationalization for making these statements, but instead disagreed with their characterization as falsehoods.

4

foreman.[3]

Plaintiff testified at trial that she was arguing with Loeza on May 25 because he had grabbed her and pinched her breast so hard that it made her eyes tear, caused bruising and almost ripped her skin off. Yet there is no mention at all of this particular (and one would think, noteworthy) incident anywhere in Plaintiff's EEOC charge or in any medical report. There is no evidence that Ms. Franco complained about the pinching/grabbing to any supervisor or human resource representative, and no evidence that it came up anywhere in the subsequent investigation into Plaintiff's allegations of sexual harassment on the evening of May 25. The incident was not mentioned in either of Plaintiff's letters to the plant manager, Steve Becker, following her termination.[4] Plaintiff did not mention the pinching/grabbing incident to Sean Benson, who sent her home immediately after the incident, or to supervisor Darlene Parsons who escorted Plaintiff from the plant on the evening of the fighting incident. Ms. Franco testified that she related the pinching incident to Darlene Parsons on the way out of the plant, and that Ms. Parsons responded with words to the effect of "it's a little late for that now." Ms. Parsons, who was called as a rebuttal witness, testified that she did not recall Plaintiff making any complaints about bruising or pinching while escorting Ms. Franco from the plant. I find Ms. Parson's testimony to be credible and reliable.

---

[3] In responding to Defendant's motion for the Court to view the Leprino plant, the Court visited the premises during trial around the areas where the relevant incidents occurred. I have determined that Ms. Ibarra, Ms. Cruz and Ms. Vallejos were positioned at the time on the plant floor to where they had an unobstructed view of Ms. Franco, Mr. Loeza, and Mr. Benson.

[4] Plaintiff stated in these letters that she enjoyed her job at Leprino and wanted to return, and that she felt her termination was wrongful and desired a chance to explain her side of the story. However, the tone of these letters is such that the reader would not be alerted that sexual harassment or discriminatory conduct of any kind had occurred.

5

In order to determine if the complained-of conduct was sufficiently severe or pervasive enough to be actionable sexual harassment, a court must consider "the totality of the circumstances," including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998) (hostile work environment claim requires a showing of severe or pervasive conduct); Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). The word "pervasive" is not a "counting measure," but rather utilizes a broader contextual analysis. Norwest Financial Acceptance, Inc., 129 F.3d 1408, 1414 (10th Cir. 1997).

Witnesses Marisol Martinez, Hector Bugarin and Estevan de los Santos testified in Plaintiff's case. Ms. Martinez stated that she saw Loeza rubbing against Plaintiff with his "pubic area" while Plaintiff was on her knees scooping up cheese from the plant floor. She testified that one of these times,[5] Ms. Franco looked upset, and walked off, and could see from a distance of thirty or thirty-five feet that Plaintiff's eyes "looked watery." Mr. Bugarin recalled several times (no more than three) when he saw Mr. Loeza, from a distance of about seventy-five feet, make inappropriate gestures (using closed fists pulling toward his groin) referring to Plaintiff, but while talking to someone else. Bugarin stated that Plaintiff did not see Loeza make these gestures because Loeza made them behind her back. Estevan de los Santos testified that Loeza would give Plaintiff a "harder time" than other employees, and once or twice saw Loeza get about six to eight inches close to Plaintiff and yell at her.

---

[5] Ms. Martinez was not precise about the number of times she observed that conduct, testifying the number was more than five, but less than 10.

6

While I find the testimony of Martinez, Bugarin and De Los Santos credible and believe what they observed did occur, I question whether Plaintiff was subjected to a hostile work environment sufficiently severe or pervasive to alter the conditions of her employment at Leprino. Mr. Bugarin saw Loeza make gestures which might be considered sexually harassing, but which Plaintiff did not see, and therefore could not find objectionable. Norwest Financial Acceptance,129 F.3d at 1412 (conduct within the purview of Title VII must be severe or pervasive enough to create *both* "an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile"--and an environment the victim-employee subjectively perceives as abusive or hostile) (emphasis added).  The conduct witnessed by Estevan de los Santos was not of the type which can be categorized as violating Title VII standards, nor did this witness perceive the conduct to be of a sexual nature.[6]  See Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.").  Thus, all that is left to support Plaintiff's claims is the testimony of Marisol Martinez, who did witness an incident which could be characterized as sexual harassment, and Plaintiff's own testimony, which I find to be unreliable and less than credible.

According to the psychological report completed by Dr. Sandra Montoya [7], to whom

---

[6] As an added observation, I note that the constant noise level on the plant floor would have necessitated some "hollering" at close proximity, such as was heard by Mr. de los Santos, in order to make oneself heard.

[7] Dr. Montoya's deposition was offered and admitted at trial as part of Plaintiff's case-in-chief.  A portion of her report was also admitted at trial as a defense exhibit.

Plaintiff was referred by her attorney, Ms. Franco was prone to exaggeration of her complaints. Plaintiff has contended that these incidents were frequent enough that others on the floor would have seen them, and yet no other witnesses testified in support of Plaintiff. Except for the incident on the stairwell (where Loeza allegedly made a request for oral sex), which is an enclosed area out of sight from the plant floor, most of the other alleged incidents occurred on the open plant floor. Based on the Court's on-site visit to the plant, acts such as those alleged by Ms. Franco (or at least a good number of these acts) would certainly have been seen by some of the thirty to forty workers who normally work on the open floor.

The determination of whether a hostile work environment existed is a close call; however, it is one I need not make. Plaintiff ultimately fails to establish a basis for employer liability and therefore, cannot prevail on her claim. Cmp., Ford v. West, 222 F.3d 767 (10th Cir. 2000)(not reaching hostile environment question because facts were insufficient to support because of insufficient facts to support basis for employer liability under negligence theory); Hall v. Bodine Elec. Co., 276 F.3d 345, 356 (7th Cir. 2002) (finding it unnecessary to decide whether hostile environment existed because plaintiff could not establish vicarious liability basis, where plaintiff did not avail herself of mechanism by which to report harassment, and where record was "devoid of any credible evidence that employer should have known that harassment was taking place").

***Supervisory Status of Loeza***

An employer's liability for hostile environment sexual harassment hinges on whether the harasser is the victim's supervisor or merely a co-employee. Parkins v Civil Constructors of Ill, Inc., 163 F.3d 1027, 1032 (7th Cir. 1998). The analysis set forth in the Court's Order on Defendant's summary judgment motion proceeded along the assumption that Loeza was a

supervisor for Title VII purposes.  This assumption was based primarily on the fact that as Plaintiff's foreman, Loeza controlled the part of the plant floor where Plaintiff worked.  However, having examined the issue more closely based on the additional evidence heard at trial, I now conclude that Loeza was not a supervisor for purposes of triggering vicarious liability on the part of Leprino Foods.

Title VII does not define the term "supervisor."   An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment, Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir.1993); or has "immediate (or successively higher) authority over the employee," Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 745 (1998) ("Ellerth").  In general, this authority encompasses an ability to hire, fire, demote, transfer or discipline. Parkins v. Civil Constructors of Ill., 163 F.3d 1027, 1034 (7th Cir.1998) (the essence of supervisory status is the "power to hire, fire, demote, promote, transfer, or discipline an employee)." Under Ellerth, the touchstone mark of a Title VII "supervisor" is the authority to implement a tangible employment action of some kind. Ellerth, 524 U.S. at 762. ("Tangible employment actions fall within the special province of the supervisor").

I agree with Plaintiff that a simplistic approach (ability to hire / fire) is not useful, since it would eliminate all Leprino supervisors except Steve Becker, the plant manager, who had sole authority to hire or fire.  The issue requires a more individualized factual analysis. Faragher v. City of Boca Raton, 524 U.S. 775, 796 (1998) (eschewing "mechanical application" of factors); Ellerth, 524 U.S. 742, 759 (1998). The inquiry into whether Loeza can be considered a supervisor under Title VII boils down to the question of whether Loeza's authority was of a "substantial

9

magnitude" such that it would bind Leprino as the employer.  Parkins, 163 F.3d at 1034; Faragher, 524 U.S. at 789-90.

Loeza could not hire, fire, promote, demote, transfer or discipline any employees.  He could not change their work schedules, and had no input into their evaluations.  Loeza received an hourly wage and overtime, and was not evaluated in the manner reserved for supervisory or management personnel at Leprino Foods.  His authority was limited to overseeing the activity on the processing floor, which included moving Plaintiff around to different parts of the floor, which was within her job description as "sweeper."  Plaintiff's job duties and schedule were set by other individuals, not by Loeza.

I conclude that Loeza was not a "supervisor" under Title VII because he lacked both the type or scope of control over Plaintiff's employment to constitute a basis for Leprino's vicarious liability.  The result might be different with a slightly different factual scenario  -- one where Loeza had some additional authority over Plaintiff's work conditions.[8]  Relying on existing case

---

[8] Cmp., Hall v. Bodine Elec. Co., 276 F.3d 345 (7th Cir. 2002) (foreman not a supervisor where he could assign plaintiff to work on certain machines, had input into plaintiff's evaluations, and oversaw aspects of her job); Rubidoux et al v. Colo. Mental Health Inst. at Pueblo et al., 173 F.3d 1291 (10th Cir. 1999) (district court determined that head nurse was a supervisor under title VII where he set the schedules, made recommendations for hiring, and had input into employee performance; case remanded to determine whether defendant's vicarious liability was based on correct legal standard regarding litigation of affirmative defenses); see also  Grozdanich v. Leisure Hills Health Ctr., Inc., 25 F.Supp.2d 953, 973 (D.Minn.1998) (harasser was supervisor under Title VII where he was plaintiff's first line supervisor, maintained authority to control her daily activities, could recommend that employee be subject to full range of employee discipline, and used supervisory status to send plaintiff to isolated room where he could harass her); Faragher, 524 U.S. at 807 (harasser was "supervisor" under Title VII where he held "virtually unchecked authority" over plaintiffs' day-to-day activities, supervised all aspects of lifeguards' work assignments, engaged in counseling, could deliver oral reprimands, and make a record of any discipline imposed).

law, I find that Loeza had no authority to either inflict direct economic harm on Plaintiff, recommend the infliction of some type of economic harm, or have any input into any such recommendation. On the particular facts of this case, I find that any authority Loeza wielded over Plaintiff's day to day activities is insufficient to qualify him as a "supervisor" under Title VII.

*Employer Liability - Negligence*

The determination that an individual is not a supervisor eliminates any basis for an employer's vicarious liability for that individual's conduct, but in theory does not remove the possibility of a claim for employer liability based on negligence. See Wilson v. Tulsa Jr. Coll. et al., 164 F.3d 534, n.4 (10th Cir. 1998) (citing Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2267 (1998) (recognizing "the continuing validity of negligence as a separate basis for employer liability"); Hall, 276 F.3d 345 (7th Cir. 2002) (proceeding to analyze claim under negligence theory after dismissing claim based on vicarious liability). Still, the analysis of this particular case should end here. The Court's assessment of the pleadings was that Plaintiff's claims were not based on a negligence theory (Doc. 106, n.3).[9] However, Plaintiff's description of the case in the Pretrial Order appears to loosely set forth a negligence basis for Leprino's liability, Pretrial Order at 3. Also, Plaintiff introduced evidence at trial which could be viewed as conforming to that theory. Therefore, I will continue to make findings on the evidence under a negligence theory although in the end, that theory fails.

An employer can be liable for hostile work environment based on a supervisor's or co-workers' sexual harassment where the employer knew, or should have known, about the

---

[9] Plaintiff's counsel did not subsequently disabuse the Court of this assessment nor clarify it by seeking to amend the pleadings.

11

violation and failed to respond in a reasonable manner, Ford, 222 at 767.  In order to prevail on a hostile work environment claim against Leprino on a negligence theory, Ms. Franco must show that Leprino had actual or constructive notice of the hostile work environment and failed to respond adequately to that notice.  Davis v. UPS et al, 142 F.3d 1334 (10th Cir. 1998).  Based on all the evidence and carefully weighing the testimony of witnesses offered at trial, I find that Plaintiff has not demonstrated such failure on Leprino's part.[10]

*Actual Notice*

I find that Ms. Franco did not report the sexual harassment conduct that forms the basis for her allegations such that Leprino was put on notice of its occurrence.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th Cir.1998) (the negligence analysis can be divided into two separate inquiries, looking "first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses").  Plaintiff's complaint of Loeza's conduct on the evening of May 25, 2000 is supported by other witnesses who testified.  However Ms. Franco's claim that she reported these incidents *before* May 25, 2000 is not credible. Not one witness testified that she made any complaint of sexual harassment prior to that date, and there is no evidence (other than her own testimony and statement on her subsequent EEOC filing) that supports her claim.

Plaintiff stated that she complained to Sean Benson about the harassment; that she "talked to" Gil Blancas; that she tried to tell Darlene Parsons and that she also complained to Vincent

---

[10] A plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees. An employer may be deemed to have constructive knowledge of harassment where the pervasiveness of the harassment supports an inference of employer knowledge. Ford v. West, 222  F.3d 767.

Arranda, who had initially interviewed her for the job.  Mr. Arranda did not testify at trial. Darlene Parsons said that Plaintiff had talked with her, but only about schedule changes, getting time off, and the work habits of other employees, but at no time made any reference to sexual harassment.[11]  At trial, Ms. Franco was hazy on any specific recollection of complaints she made to Sean Benson, but stated that she told Benson about the harassment during a February 25, 2000 meeting that included herself, Benson and Loeza.  Benson testified that Plaintiff never complained about sexual harassment, either at that meeting, or at any other time.  He remembered that at the February 25 meeting, Plaintiff complained to him about other workers not pulling their weight, about herself working harder than others, and about Loeza "picking" on her and telling her what to do.

Benson's notes of the meeting reflect that discussion was held on these topics.  Plaintiff's position is that Benson's notes are unreliable and inaccurate because Loeza's notes of the same meeting contained additional entries which were omitted from Benson's notes.[12]  I find the omission of certain other topics to be immaterial. It is implausible to infer from these omissions that Plaintiff did indeed complain about sexual harassment by Loeza at that meeting as well, but that it was never documented in anyone's notes.[13]

---

[11] The Court sustained Plaintiff's objection to Gil Blancas' notes of the May 25 incident, and they were not admitted.  Plaintiff could not specifically remember any time when she actually spoke with Mr. Blancas other than after May 25 when she was sent home.

[12] There was apparently some discussion of another worker committing suicide because Loeza allegedly had ridden him too hard; about Plaintiff's use of profanity, which supposedly triggered the February 25 meeting, and rumors that Loeza was going around calling Plaintiff an "old bitch."

[13] Unlike the other topics discussed at the meeting, complaints of sexual harassment would require immediate attention, and activate immediate action on the part of management at

Plaintiff's recollections were both somewhat vague and inconsistent as to whom she specifically complained to, what exactly she complained about, and when these complaints were made. Also, it is difficult to accept that Plaintiff is timid about approaching management, since she had no problem approaching supervisors to complain about other workers or to get time off. On the other hand, I find both Sean Benson and Darlene Parsons to be credible witnesses. The evidence presented at trial in the form of notes and documentation supports their testimony. Thus, the weight of this evidence goes against Plaintiff on the issue of whether she gave any notice to any supervisor or human resource representative.

*Constructive Notice*

Plaintiff has not shown that the pervasiveness of the sexual harassment that allegedly occurred at Leprino supports an inference of employer knowledge. Adler, 144 F.3d at 673. Not one of the witnesses at trial (including Plaintiff's witnesses Marisol Martinez, Hector Bugarin and Estevan de los Santos) reported any instances of harassment to any supervisory employee, or any human resource representative. There was some testimony by these witnesses that complaining about sexual harassment would jeopardize their jobs, but no one offered any evidence that these generalized fears were justified. See Harrison v. Potash, 248 F.3d 1014, 1026 (10th Cir. 2001) (an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under Ellerth to alert the employer to the allegedly hostile environment). Despite Plaintiff's testimony on cross-examination that "people knew that he [Loeza] did this," Plaintiff presented no witnesses other than Marisol Martinez, Hector Bugarin and Estevan de los Santos in

---

Leprino. Any inferences on this issue go against Plaintiff's position, given the actions taken by Leprino when it is clear that Plaintiff did finally complain about Loeza on May 25.

14

her case-in-chief to support this statement.

Plaintiff proffered other instances of alleged sexual harassment, but these are not very helpful to Plaintiff's case.[14] The alleged harasser in co-worker Tracy Clayton's situation was not Loeza, and is therefore not relevant to Leprino's being put on notice with regard to harassing conduct by Loeza. See Hirase-Doi v. US West, Inc., et. al, 61 F.3d 777, 781-82 (10th Cir. 1995) (employer may be put on notice "if it learns that the *perpetrator* has practiced widespread sexual harassment in the office place, even though employer may not have known that this particular plaintiff was none of the perpetrator's victims) (emphasis added). Isabel Garcia, another Leprino employee, did complain about sexual harassment by Loeza, but the incidents occurred *after* Ms. Franco left Leprino -- again, not relevant to any alleged negligence on Leprino's part in responding to Plaintiff's claims against Loeza.

Even if these other instances were relevant to Plaintiff's case, I do not find them to constitute acts of harassment are "so egregious, numerous, and concentrated as to add up to a campaign of harassment" that they would constitute constructive notice to Leprino of sexual harassment. See Adler, 144 F.3d at 675 (quoting Baker v. Weyerhaeuser Co., 903 F.2d 1342, 1346 (10th Cir. 1990)). Moreover, the evidence and testimony shows that Leprino's responses to

---

[14] In Plaintiff's Response to Defendant's Motion to Exclude Evidence (Doc. 127), Plaintiff presented other instances of sexual harassment that occurred at the Leprino plant. Relying on Hirase-Doi v. US West, Inc., et. al, 61 F.3d 777, 781-82 (10th Cir. 1995), I ruled that evidence of other instances or complaints would be limited to those of which Plaintiff was herself aware (thereby meeting the subjective component of a hostile work environment claim), and those instances which took place within the time period of Plaintiff's employment at Leprino. This ruling was made in connection with the specific issue of whether a hostile environment existed. However, I may consider such evidence now on the issue of whether Leprino was negligent or unreasonable in preventing or remedying instances of harassment of which they had notice.

these reported incidents were prompt and reasonable.

*Leprino's Response*

The final part of any hostile work environment claim premised on a negligence theory ends with an inquiry into whether an employer was unreasonable in failing to prevent or rectify a hostile work environment of which it knew or should have reasonably known. Based on the testimony and evidence admitted at trial, I find that Leprino had an established written anti-discrimination and anti-harassment policy in place, that it was disseminated to each and every employee during the orientation period, and that employees were provided written information regarding conduct that constituted sexual harassment. Leprino's policy sets out a procedure stating who should be contacted if an employee had questions or complaints, and material on the subject was visibly posted in different areas of the plant.

Leprino's responses to sexual harassment complaints were prompt and reasonable. In Ms. Franco's case, I find that the first credible instance of her reporting sexual harassment by Loeza was May 25, 2000, for the above stated reasons. Sean Benson took the complaint through the proper channels in a timely fashion, and Steve Becker initiated an investigation through the human resources department. Even with regard to the instances involving Tracy Clayton and Isabel Garcia, Leprino responded reasonably. Ms. Clayton's harasser (not Loeza) was precluded from working in the same area as Ms. Clayton. After Leprino investigated Ms. Garcia's complaints against Loeza (subsequent to Plaintiff's term of employment at the plant), Loeza was demoted, removed from Ms. Garcia's work area, and was notified in writing that future incidents could result in termination. Contrary to what Plaintiff seems to believe, Leprino is not always required to fire a harasser in order for its response to be reasonable. Adler v. Walmart Stores Inc.,144

16

F.3d 664, 676 (10th Cir. 1998) ("An employer is not liable, although a perpetrator persists, so long as each response was reasonable. It follows that an employer is not required to terminate a perpetrator except where termination is the only response that would be reasonably calculated to end the harassment); <u>Baskerville v. Culligan Internat'l Co</u>., 50 F.3d 428, 432 (7th Cir. 1995) (An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees).

In sum, even assuming that a hostile work environment existed, I find that Plaintiff has not shown by a preponderance of the evidence that Defendant had actual or constructive notice of a hostile work environment, or that Defendant was negligent or unreasonable in failing to prevent or respond adequately to any incident of which they did have notice. Accordingly, I find that Defendant is not liable to Plaintiff on any of her Title VII claims.

*Damages*

Having determined that Plaintiff has not proven her case by a preponderance of the evidence, I need not address damages. However, I would point out that even if Plaintiff had prevailed on her hostile environment claim, the Court would have awarded Plaintiff only minimal damages, for the following reasons.

By the close of trial, Plaintiff was potentially entitled only to emotional damages. Defendant's motion to strike Plaintiff's claim for punitive damages was granted. Ms. Franco would have had no basis for back pay since I dismissed Plaintiff's retaliation claim and determined that her termination was justified under Leprino's standards for employee conduct. Nor would she have a basis for requesting front pay, since the evidence indicates that Plaintiff failed to mitigate her damages regarding future earnings. Plaintiff was out of work for nine months after

17

her termination, and with the exception of two short-lived jobs following her employment at Leprino, Plaintiff has not worked since November 2001. Although Plaintiff attributes her unemployment to the stress and depression created by her harassment at Leprino, the medical evidence (VA medical records) not only does *not* support this, but is inconsistent with Plaintiff's testimony. Further, Dr. Sandra Montoya testified in her deposition that she did not determine that Plaintiff was disabled from working.

This same medical evidence precludes an award for emotional damages. Plaintiff simply has not met her burden of proving that the sexual harassment she alleges to have experienced while working at Leprino caused any of the depression or stress she claims to suffer. The medical records indicate that Ms. Franco presented with emotional problems for the first time in March 2001,[15] over a year after her termination from Leprino. During these visits, she stated a myriad of reasons as the source of her symptoms: her husband's severe medical problems (he was on dialysis several times week); the death of her older son five years earlier; financial dependence and isolation,[16] and recent questionable results of her mammogram. Plaintiff never mentioned sexual harassment as the reason for her stress or depression until May 2, 2002, nearly *two years* after her employment with Leprino ended. Thus, it would have been impossible for the Court to allocate the percentage of her emotional distress that was attributable to having experienced a hostile work environment, even if Plaintiff had succeeded on this claim -- and Plaintiff did not

---

[15] Plaintiff had "declined a depression screen" at a previous visit in February 2001.

[16] At one point in her testimony on direct examination, Plaintiff had stated that she sought employment at Leprino in order to help with the growing cost of her husband's medical care. According to a progress note dated April 23, 2001 in the VA medical records, Ms. Franco stated she went back to work "to avoid the stress of being around his illness."

present any medical evidence[17] which would have made that kind of calculation possible.

*Attorney Fees*

Defendant seeks to recover its attorney's fees and costs under §42 U.S.C. 1988. A defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the Court finds that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).

Defendant need not submit further documentation supporting its request, as the Court will not consider it. Plaintiff has not ultimately prevailed on the merits of her claims by proving her case by a preponderance of the evidence. At the same time, determinations on the different issues in this case (whether Loeza was a supervisor, whether a hostile environment existed) required scrutiny which belies any of these issues being characterized as frivolous or unreasonable. Therefore, Defendant's request for attorney's fees is denied.

**THEREFORE**,

**IT IS ORDERED** that Plaintiff has not proven her claim of a hostile work environment under Title VII by a preponderance of the evidence for the reasons set forth above;

**IT IS FURTHER ORDERED** that Defendant's request for attorney's fees is DENIED;

**IT IS FINALLY ORDERED** that this case is dismissed in its entirety.

---

[17] In December of 2002, Plaintiff's counsel submitted a supplemental witness disclosure statement which revealed for the first time Plaintiff's intention to call a medical expert witness. Since Plaintiff's disclosure of the medical witness was filed one year after the deadline for disclosing Plaintiff's expert witnesses, eight months after discovery cutoff and five weeks before trial, the Court sustained Defendant's objections to the late disclosure of Plaintiff's medical witness. See Initial Pretrial Report, Doc. 34.

A Judgment in accordance with this Memorandum Opinion and Order shall issue.

_____
UNITED STATES DISTRICT JUDGE